# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

GLENDA K. BAILEY, )
)
        Plaintiff, )
)
v. )   Case No. CIV-15-503-RAW-SPS
)
NANCY A. BERRYHILL, )
Acting Commissioner of the Social )
Security Administration,[1] )
)
)
        Defendant. )

## REPORT AND RECOMMENDATION

The claimant Glenda K. Bailey requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). The claimant appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining she was not disabled. As discussed below, the undersigned Magistrate Judge RECOMMENDS that the Commissioner's decision be REVERSED and the case REMANDED to the ALJ for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of such

---

[1] On January 20, 2017, Nancy A. Berryhill became the Acting Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Ms. Berryhill is substituted for Carolyn Colvin as the Defendant in this action.

severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id.* § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799,

---

[2] Step one requires the claimant to establish that she is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. *Id.* §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity, or if her impairment is not medically severe, disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant suffers from a listed impairment (or impairments "medically equivalent" to one), she is determined to be disabled without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must establish that she lacks the residual functional capacity (RFC) to return to her past relevant work. The burden then shifts to the Commissioner to establish at step five that there is work existing in significant numbers in the national economy that the claimant can perform, taking into account her age, education, work experience and RFC. Disability benefits are denied if the Commissioner shows that the claimant's impairment does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

### Claimant's Background

The claimant was born on March 10, 1961, and was fifty-four years old at the time of the most recent administrative hearing (Tr. 554). She completed the eighth grade, and has no past relevant work (Tr. 170, 549). The claimant alleges she has been unable to work since May 1, 2010, due to panic attacks, anxiety, spinal scoliosis, urinary problems, and hypertension (Tr. 169, 538).

### Procedural History

The claimant applied for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85, on July 19, 2011. Her application was denied. ALJ James Bentley conducted an administrative hearing and found that the claimant was not disabled in a written opinion dated September 28, 2012 (Tr. 10-23). The Appeals Council denied review, but this Court reversed in Case No. CIV-13-180-RAW-SPS, with instructions on remand to properly evaluate the evidence and opinions in the record. On remand, ALJ Lantz McClain held a second administrative hearing and again determined that the claimant was not disabled in a written decision dated May 18, 2015. The Appeals Council again denied review, so ALJ McClain's written opinion is the final decision of the Commissioner for purposes of this appeal. *See* 20 C.F.R. § 416.1481.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step five of the sequential evaluation. He found the claimant retained the residual functional capacity ("RFC") to perform medium work as defined in 20 C.F.R. § 416.967(b), *i. e.*, she is able to lift/carry fifty pounds occasionally and twenty-five pounds frequently, and stand/walk and sit six hours in an eight-hour workday, and that she is able to perform simple, repetitive tasks, and relate to supervisors and coworkers superficially, but not able to work with the public (Tr. 542). The ALJ concluded that although the claimant had no past relevant work to return to, she was nevertheless not disabled because there was other work that she could perform, *i. e.*, dishwasher and hospital cleaner (Tr. 550).

**Review**

The claimant alleges that the ALJ erred by: (i) disregarding the opinion of her treating physician, Dr. Gerald Rana; (ii) failing to consider all of her impairments in combination; (iii) failing to properly assess her credibility; and (iv) finding she could perform medium work.[3] The undersigned Magistrate Judge agrees with the claimant's first and fourth contentions, and the Commissioner's decision should therefore be reversed.

The ALJ determined that the claimant had the severe impairments of history of back pain, generalized anxiety disorder, moderate depression with chronic irritability and borderline personality disorder with prominent dependent traits (Tr. 540). Relevant

---

[3] The undersigned Magistrate Judge notes that the claimant has failed to comply with LCvR 5.2(a) and 7.1(c) regarding format and the requirements regarding an indexed table of contents, but nevertheless proceeds on the merits of the arguments.

medical records reflect treatment notes from Dr. Rana for the claimant from 2006 through 2015. Notes reflect repeated complaints of right shoulder and neck pain, polymyalgia, fibromyalgia, as well as anxiety, hypertension, low back pain, lumbar spinal stenosis, osteoarthritis, and PTSD (Tr. 305-328, 376-390, 877-900, 947-976). Notes repeatedly reflect a decreased range of motion with back flexion and extension (Tr., *e. g.*, 378, 380, 877, 881, 883, 887, 949, 967).

On September 14, 2012, Dr. Rana complete a physical Medical Source Statement (MSS), in which he indicated that the claimant's symptoms included chronic pain that was worse in the back and left hip, and increased fatigue and dizziness (Tr. 513). He noted that she had decreased range of motion of the left shoulder, and also stated that depression, somatoform disorder, and anxiety were affecting her physical condition (Tr. 513-514). He indicated that she could both sit and stand/walk less than two hours total, that she needed a job that allowed her to shift positions, and would need to take unscheduled breaks (Tr. 514). He further stated that she would need to elevate her legs (Tr. 515). Dr. Rana stated that the claimant could occasionally lift/carry less than ten pounds, that she could rarely stoop and crouch/squat, but that she could never twist, climb stairs, or climb ladders (Tr. 515). He also checked the box indicating that he believed the claimant would be off task approximately 20% of the time, and that she was incapable of even low stress work (Tr. 516).

On February 10, 2010, Dr. Ronald Schatzman conducted a physical exam of the claimant and assessed her with obesity, back pain, scoliosis, and two positive points for fibromyalgia (Tr. 298). He further noted that her lumbar-sacral spine was non-tender

with limited range of motion associated with pain (Tr. 298-302). Dr. Schatzman again examined the claimant on October 8, 2013 (Tr. 902). He assessed her with hypertension, spinal scoliosis, osteoarthritis, borderline personality disorder by history, depression by history, anxiety attacks by history, panic attacks by history, and tobacco use (Tr. 904). Notes reflect limited back flexion (Tr. 905, 908). On November 21, 2011, Dr. Wojciech Dulowski examined the claimant as well. He assessed her with chronic back pain, slight scoliosis of her thoracolumbar spine, low back pain, major depression, and hypertension (Tr. 341). The thoracic spine had very minimal scoliosis, while she had increased lumbar lordosis, and spasms of paravertebral muscles (Tr. 341).

Dr. Theresa Horton, Ph.D., conducted three separate mental status exams of the claimant. On February 2, 2010, Dr. Horton assessed the claimant with panic disorder, generalized anxiety disorder, major depressive disorder that was recurrent and severe, and dysthymia with early onset (Tr. 280). She stated that the claimant appeared capable of understanding, remembering, and managing simple and complex instructions and tasks, but not while adjusting and adapting into an occupational setting (Tr. 280). Dr. Horton further noted that the claimant's presentation was odd and she likely had struggles in all but small, familiar social settings, and that these impairments were in addition to her serious complaints of physical pain (Tr. 280). On November 1, 2011, Dr. Horton again examined the claimant and assessed her with major depressive disorder that was recurrent and severe, anxiety disorder not otherwise specified, panic disorder, and borderline personality disorder (Tr. 337). She again noted the claimant appeared capable of understanding, remembering, and managing simple and somewhat more complex tasks

and instructions, but also stated that it appeared she had developed persistent self-defeating personality traits early in life that and interfered with relationships and would continue to make adequate adjustment into occupational and social settings difficult (Tr. 337). On October 15, 2013, Dr. Horton assessed the claimant and diagnosed her with generalized anxiety disorder, major depressive disorder that was recurrent and mild to moderate with chronic irritability, and borderline personality disorder with prominent dependent traits (Tr. 914). She made the same initial statement, then indicated that the claimant likely struggles in many settings and may not do well, particularly in areas that are fast paced, demanding, and/or densely populated (Tr. 914).

A state reviewing physician found that the claimant was moderately limited in activities of daily living, maintaining social functioning, and maintaining concentration, persistence, and pace (Tr. 358). A more detailed mental RFC assessment indicated the claimant had marked limitations in the typical three areas of understanding and remembering detailed instructions, carrying out detailed instructions, and interacting appropriately with the general public, then stated that she could perform simple tasks with routine supervision, relate to supervisors and peers on a superficial work basis, and can adapt to a work situation, but could not relate to the general public (Tr. 364).

As to her physical impairments, Dr. Luther Woodcock completed a form indicating that the claimant appeared capable of performing medium work with no postural or manipulative limitations (Tr. 367-373).

In his written opinion, the ALJ summarized the claimant's hearing testimony, as well as third party testimony from her husband, in addition to much of the medical

evidence in the record. As to Dr. Rana's evidence and opinion, the ALJ summarized three of the claimant's appointments with him, and appeared to opine that because she did not appear to be in distress, it undermined a finding of anxiety (Tr. 546-548). The ALJ also acknowledged Dr. Rana's finding that the claimant had decreased range of motion of the back, but also noted that the degree was not reported (Tr. 548). As to Dr. Rana's MSS, the ALJ declined to give it controlling weight, stating that such limitations were "grossly exaggerated in light of the objective medical evidence" (Tr. 548). In support, he referenced the state reviewing physician opinion which pre-dated Dr. Rana's MSS, and the state reviewing physician who completed the mental RFC assessment, as well as the findings of Dr. Schatzman's 2013 consultative exam (Tr. 548-549). The ALJ did not address the multiple and repeated findings regarding the claimant's back pain and documented reduced range of motion in finding that the claimant could perform medium work, which by definition includes lifting up to fifty pounds occasionally every day (Tr. 549). As to Dr. Horton's assessments, the ALJ summarized two of her assessments, but largely rejected her findings, stating that the limitations were not supported by her examinations and were not consistent with unspecified medical evidence of record (Tr. 545-548). The ALJ did not acknowledge that her *three* opinions consistently expressed concerns about her ability to adjust to an occupational setting and to be around others. The ALJ then found the claimant not credible, indicating that her testimony of her limitations appeared to be an exaggeration, based on unspecified medical evidence (Tr. 548).

Medical opinions from a treating physician are entitled to controlling weight if

they are "'well-supported by medically acceptable clinical and laboratory diagnostic techniques . . . [and] consistent with other substantial evidence in the record.'" *See Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004), *quoting Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). If a treating physician's opinion is not entitled to controlling weight, the ALJ must determine the proper weight to give it by analyzing the factors set forth in 20 C.F.R. §§ 404.1527 and 416.927. *Id.* at 1119 ("Even if a treating physician's opinion is not entitled to controlling weight, '[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in [§§ 404.1527 and 416.927].'"), *quoting Watkins*, 350 F.3d at 1300. Those factors are: (i) the length of the treatment relationship and the frequency of examination; (ii) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (iii) the degree to which the physician's opinion is supported by relevant evidence; (iv) consistency between the opinion and the record as a whole; (v) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (vi) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *Watkins,* 350 F.3d at 1300-1301, *citing Drapeau v. Massanari,* 255 F.3d 1211, 1213 (10th Cir. 2001) [quotation omitted]. Finally, if the ALJ decides to reject a treating physician's opinions entirely, "he must . . . give specific, legitimate reasons for doing so[,]" *id.* at 1301 [quotation marks omitted; citation omitted], so it is "clear to any subsequent reviewers the weight [he] gave to the treating source's medical opinion and the reasons for that weight." *Id.* at 1300 [quotation omitted].

The ALJ was required to evaluate for controlling weight any opinions as to the claimant's functional limitations expressed by her treating physician. The ALJ's analysis, as described above, falls short in this case. Although the ALJ noted the proper analysis at the outset of step four, he failed to properly apply it when he ignored the evidence in the record. This was an improper assessment where, as here, the ALJ appeared to adopt most of the state physician's findings but failed to explain why the claimant's documented reduced range of motion (noted by every treating physician and consultative examiner) and continued back pain nevertheless enabled her to perform medium work, with its attendant total sitting/standing requirements and lift/carry requirements in an eight-hour workday. *Drapeau v. Massanari*, 255 F.3d 1211, 1214 (10th Cir. 2001) (A reviewing court is "'not in a position to draw factual conclusions on behalf of the ALJ.'"), *quoting Prince v. Sullivan*, 933 F.2d 598, 603 (7th Cir. 1991). *See also Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004) (noting that the ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence."), *citing Switzer v. Heckler*, 742 F.2d 382, 385-386 (7th Cir. 1984) ("Th[e] report is uncontradicted and the Secretary's attempt to use only the portions favorable to her position, while ignoring other parts, is improper.") [citations omitted].

The undersigned Magistrate Judge further notes that the Social Security Administration eliminated the term "credibility" in Soc. Sec. Rul. 16-3p, 2016 WL 1119029 (Mar. 16, 2016), and has provided new guidance for evaluating statements pertaining to intensity, persistence, and limiting effects of symptoms in disability claims.

"Generally, if an agency makes a policy change during the pendency of a claimant's appeal, the reviewing court should remand for the agency to determine whether the new policy affects its prior decision." *Frantz v. Astrue*, 509 F.3d 1299, 1302 (10th Cir. 2007) (*quoting Sloan v. Astrue*, 499 F.3d 883, 889 (8th Cir. 2007).

Because the ALJ refused to discuss probative evidence inconsistent with his RFC determination, the undersigned Magistrate Judge finds he did not properly consider it. Consequently, the decision of the Commissioner should be reversed and the case remanded to the ALJ for further proper analysis of the claimant's RFC in light of *all* the evidence and *all* of the claimant's impairments. If on remand there is any adjustment to the claimant's RFC, the ALJ should re-determine what work, if any, the claimant can perform and ultimately whether she is disabled.

## Conclusion

The undersigned Magistrate Judge finds that correct legal standards were not applied by the ALJ and that the decision of the Commissioner is therefore not supported by substantial evidence. Accordingly, the Magistrate Judge RECOMMENDS that the ruling of the Commissioner of the Social Security Administration be REVERSED and the case REMANDED for further proceedings not inconsistent herewith. Any objections to this Report and Recommendation must be filed within fourteen days. *See* Fed. R. Civ. P. 72(b).

**DATED** this 1st day of March, 2017.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**